# EXHIBIT 1

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INFINEUM INTERNATIONAL LTD. and )
INFINEUM USA L.P.,                      )
                                        )
            Plaintiffs,                 )
                                        )   C. A. No. 05-884 (JJF)
      v.                                )
                                        )
AFTON CHEMICAL CORP.,                   )
                                        )
            Defendant.                  )

## STIPULATION AND PROTECTIVE ORDER

Each of the parties to the above captioned action (the "Action") may seek discovery of

documents, information or other materials which may contain or relate to confidential, proprietary

or trade secret information of another party or of a non-party. Pursuant to Rule 26(c) of the

Federal Rules of Civil Procedure, it is hereby stipulated and agreed between the parties, through

their respective counsel, and subject to the Court's approval, that the following procedure will be

used in this Action for the protection of the parties against the improper use or disclosure of

confidential information produced in discovery, filed with the Court, or adduced at depositions,

hearings, or at trial. In addition, the procedures of this Order will apply to any non-party that

produces information in response to discovery requests in this Action and agrees to be bound

under the terms of this Order.

1.      "Confidential Information" shall mean and include any document (whether in

hard copy or computer readable form), thing, deposition testimony, interrogatory answers,

responses to requests for admissions and/or production, or other information provided in

discovery in this Action ("Discovery Material"), which a party (or a non-party producing

Discovery Material in response to discovery requests in this Action who agrees to be bound by

the terms of this Order) designates as "Confidential" and which contains non-public, confidential

or proprietary information, whether personal or business-related. Certain types of Confidential

Information may be further designated, as defined and detailed below, as "Confidential – Outside

Counsels' Eyes Only." The Confidential – Outside Counsels' Eyes Only designation shall be reserved for confidential information that constitutes, reflects, or concerns trade secrets, know how, or proprietary technical data, or business, financial or commercial information, the disclosure of which would be likely to cause harm to the business or competitive position of the party making the confidential designations on Discovery Material ("the Producing Party"). All such Confidential or Confidential – Outside Counsels' Eyes Only designations shall be made in good faith by the Producing Party and made at the time of disclosure, production, or tender to the party receiving the same ("Receiving Party").

2.    The designation of Discovery Material in the form of documents, responses to admissions and interrogatories, or other tangible materials (including, without limitation, CD-ROMs, DVDs, and tapes) other than depositions or other pretrial testimony as Confidential or Confidential – Outside Counsels' Eyes Only shall be made by the Producing Party in the following manner:

(a)    Documents designated Confidential shall be so marked by conspicuously affixing the legend "CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER" or similar designation on each page containing any Confidential Information (or in the case of computer medium on the medium and its label and/or cover) to which the designation applies. Such designated Discovery Material shall, to the extent practical, be identified by production number. To the extent practical, the Confidential legend shall be placed near the production number

(b)    Documents designated Confidential – Outside Counsels' Eyes Only shall be so marked by conspicuously affixing the legend "CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY PURSUANT TO PROTECTIVE ORDER" or similar designation on each page containing any Confidential – Outside Counsels' Eyes Only Information (or in the case of computer medium on the medium and its label and/or cover) to which the designation applies. Such designated Discovery Material shall, to the extent practical, be identified by production

2

number. To the extent practical, the Confidential – Outside Counsels' Eyes Only legend shall be placed near the production number.

(c)     If a document has more than one designation, the more restrictive or higher confidential designation applies.

3.     "Confidential" and "Confidential – Outside Counsels' Eyes Only" Information shall not include any Discovery Materials which:

(a)     Have been or become lawfully in the possession of the Receiving Party through communications other than production or disclosure in this Action, or in another litigation, for example, as a result of legitimate business dealings between the parties, unless those documents are covered by a separate non-disclosure or confidentiality agreement, in which case the Receiving Party may continue to use such documents in the course of its business subject to those agreements; or

(b)     Have been or become part of the public domain by publication or otherwise and not due to any unauthorized act or omission on the part of the Receiving Party or any of its authorized representatives or designees under this Protective Order. Nothing herein shall impose any restriction on the use or disclosure by a party of its own documents or information.

4.     In the absence of written permission from the Producing Party or order of the Court, disclosure of Confidential and Confidential – Outside Counsels' Eyes Only Information shall be limited to the following "Qualified Persons" in this Action:

(a)     Young, Conaway, Stargatt & Taylor, LLP and Kenyon & Kenyon LLP, attorneys of record for plaintiffs Infineum International Ltd. and Infineum USA L.P., and their stenographic, clerical, paralegal, and other support employees whose duties and responsibilities require access to such materials;

(b)     Potter Anderson & Corroon LLP and Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, attorneys of record for defendant Afton Chemical Corp., and their

3

stenographic, clerical, paralegal, and other support employees whose duties and responsibilities require access to such materials;

## INFINEUM'S PROPOSED PARA. 4(c)

(c)     For each side, a total of three in-house counsel, whose names are listed below (as well as their secretaries, paralegals and other support personnel) and who have responsibility for maintaining, defending or evaluating this litigation, except that Confidential – Outside Counsels' Eyes Only information shall not be disclosed to any person described in this paragraph 4(c) without the express written consent of the Producing Party.  For purposes of this paragraph, plaintiffs will be considered to be a single side/party.

The approved in-house counsel are as follows:

|  | Plaintiffs | Defendant |
|---|---|---|
| Name Title | Stewart McCallum Vice President and   General Counsel Infineum International Ltd. | Steven M. Edmonds Vice President and   General Counsel NewMarket Services Corp. |
| Name Title | Susan Fletcher Watts Chief Intellectual Property Attorney Infineum International Ltd. | Ann T. Burks Assistant Counsel NewMarket Services Corp. |
| Name Title | Jacob Levine Principal Patent Attorney Infineum USA L.P. |  |

Either party to this Action may substitute the in-house counsel of that party who are listed above with other in-house employees of that party for good cause, provided that (i) the total number of listed in-house counsel of that party does not exceed three at any time, and (ii) that the substitute in-house counsel meet the description and agree to the requirements set forth above in this paragraph 4(c).

**AFTON'S PROPOSED PARA. 4(c)**

(c)    For each side, a total of three in-house counsel, whose names are listed below (as well as their secretaries, paralegals and other support personnel) who: (i) have responsibility for maintaining, defending or evaluating this litigation; (ii) are not, directly or indirectly, involved in the preparation or prosecution of any patent applications relating to engine oil lubricants or additive packages for such lubricants; and (iii) agree in writing not to engage in the preparation or prosecution of patent applications relating to engine oil lubricants or additive packages for such lubricants for a period ending two (2) years from the date of termination of this Action; except that Confidential – Outside Counsels' Eyes Only information shall not be disclosed to any person described in this paragraph 4(c) without the express written consent of the Producing Party.  For purposes of this paragraph, plaintiffs will be considered to be a single side/party.

The approved in-house counsel are as follows:

|  | Plaintiffs | Defendant |
|---|---|---|
| Name Title | Stewart McCallum Vice President and General Counsel Infineum International Ltd. | Steven M. Edmonds Vice President and General Counsel NewMarket Services Corp. |
| Name Title |  | Ann T. Burks Assistant Counsel NewMarket Services Corp. |
| Name Title |  |  |

Either party to this Action may substitute the in-house counsel of that party who are listed above with other in-house employees of that party for good cause, provided that (i) the total number of listed in-house counsel of that party does not exceed three at any time, and (ii) that the substitute in-house counsel meet the description and agree to the requirements set forth above in this paragraph 4(c).

(d)    Retained independent consultants, experts, or translators for plaintiffs or defendant (as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials) who are not current employees of any party to this litigation, or any direct competitor of any party to this litigation (and who have no current intention to become an employee of a party to this litigation or a competitor thereof) and who have complied with the following procedures:

(i)    Before receiving any Confidential or Confidential – Outside Counsels' Eyes Only Information the individual shall be furnished with a copy of this Protective Order and shall acknowledge, by executing the acknowledgment form attached hereto as Exhibit A, that he or she has read this Protective Order, understands it, and agrees to be bound by it, and also expressly consents to the jurisdiction of this Court in connection with any proceeding or hearing relating to the enforcement of this Protective Order.

(ii)    The executed acknowledgment form along with the individual's curriculum vitae and an identification of any past or present employment or consulting relationship with any party or any related company must be provided to all other parties in this action at least seven (7) business days before any disclosure is made. If, within seven (7) days after receiving notice, any party objects to the disclosure of that party's Confidential or Confidential – Outside Counsels' Eyes Only information, stating with particularity in writing the basis for the objection, no disclosure of that party's Confidential or Confidential-Outside Counsel's Eyes Only information shall be made until the matter is resolved by the Court or upon agreement of the parties.

(e)    the authors, senders, addressees, and identified copy recipients of such Confidential or Confidential – Outside Counsels' Eyes Only Information and employees of the Producing Party;

(f)    The Court, Court personnel and stenographic and video reporters engaged in proceedings incident to this Action; and

6

(g)    Outside document copying services (*e.g.*, Ikon, Xerox), and/or document coding, computerization, jury consultants, or other litigation support services (*e.g.*, Quorum/Lanier). For purposes of this paragraph 4(g), "document" refers to paper documents, video tapes, CD-ROMs, DVDs, computer discs, and other similar media.

(h)    In the event that counsel for a Receiving Party deems it necessary to disclose any information of a Producing Party that is designated as Confidential or Confidential - Outside Counsels' Eyes Only to any person not specified in subparagraphs (a) through (g) above, said counsel shall notify counsel for the Producing Party in writing of (i) the information or documents it wants to disclose, and (ii) the person or persons to whom it wants to make such disclosure. If agreement cannot be reached between counsel, the Receiving Party that desires to make such disclosure may make an appropriate motion to the Court.

5.    Nothing in this Order shall preclude any party or its attorneys from:

(a)    showing a document designated as Confidential or Confidential – Outside Counsels' Eyes Only to an individual who, as indicated on the face of the document or established by other, prior evidence, either authored, sent, received, or was a designated copy recipient on the document;

(b)    using at a deposition of an officer, employee or expert of the Producing Party any document such Producing Party designated as Confidential or Confidential – Outside Counsels' Eyes Only, provided that only Qualified Persons are present while that document is being used at the deposition and that the relevant portion of the deposition transcript is placed under seal in accord with the provisions of paragraph 9 herein; or

(c)    disclosing or using, in any manner or for any purpose, any information or documents from the Producing Party's own files which the Producing Party has itself designated as Confidential or Confidential – Outside Counsels' Eyes Only.

6.    Confidential or Confidential – Outside Counsels' Eyes Only Information and the substance or content thereof, including any notes, memoranda or other similar documents relating

thereto, shall be used by a Receiving Party and its authorized representatives or designees under this Protective Order solely for the purpose of this Action and any appeals therefrom, and shall not be made available, or disclosed, or summarized to any persons, including the parties, other than as permitted under this Protective Order.

7.     Any person in possession of Confidential or Confidential – Outside Counsels' Eyes Only Information shall exercise  appropriate care with regard to the storage, custody or use of such Information in order to ensure that the confidential nature of the same is maintained.

8.     If Confidential or Confidential – Outside Counsels' Eyes Only Information is disclosed to anyone other than in a manner authorized by this Protective Order, the party responsible for such disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the Producing Party of the Confidential or Confidential – Outside Counsels' Eyes Only Information and make   all reasonable efforts to retrieve such Information and to prevent further disclosure.

9.     Any deposition transcript containing Confidential or Confidential – Outside Counsels' Eyes Only Information shall be marked on the cover as "CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER" or "CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY PURSUANT TO PROTECTIVE ORDER," as appropriate, and shall indicate as appropriate within the transcript what information has been so designated.  Whenever possible, the stenographic reporter shall be requested prior to the deposition (where the attorneys have reason to believe the testimony will contain Confidential or Confidential – Outside Counsels' Eyes Only Information) or when the Confidential or Confidential – Outside Counsels' Eyes Only Information is disclosed (when not previously anticipated) to separate those portions of the transcript containing confidential information and separately bind  them (or, if in electronic form, otherwise designate such portions as separate) from the non-confidential portions.  However, a party may designate any portion or all (if appropriate) of the transcript as containing Confidential or Confidential – Outside Counsels' Eyes Only Information by so advising, with reasonable

8

precision as to the affected testimony, the deposition reporter, who shall accordingly indicate in the deposition transcript what portion(s) of the testimony (or exhibits thereto) were so designated, or by so advising all other parties in writing, and with page and line designations, within thirty (30) business days after receipt of the transcript. Until thirty (30) business days have passed after the receipt of any transcript, that entire transcript shall be deemed to be Confidential – Outside Counsels' Eyes Only unless a prior confidentiality designation has been made. In the event of disagreement about the confidential status of a deposition transcript, it shall continue to be treated as Confidential or Confidential – Outside Counsels' Eyes Only, whichever protection is being sought, until this Court rules otherwise.

10.    Nothing in this Order shall prevent a party from using any Confidential or Confidential Outside Counsels' Only Information in any pleading, motion, other written submission to the Court, or hearing under the following conditions: Any paper or other document filed in this Action which contains or discloses Confidential or Confidential – Outside Counsels' Eyes Only Information shall be filed under seal and shall be maintained under seal according to the terms of this Protective Order or as otherwise determined by the Court. When filing papers which contain Confidential or Confidential – Outside Counsels' Eyes Only Information, the party so filing shall designate the following on the first page of the filed documents: "UNDER SEAL - SUBJECT TO PROTECTIVE ORDER - CONTAINS CONFIDENTIAL OR CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY MATERIAL" and shall otherwise comply with the Court's order on the subject. The party submitting such information shall request that the portion of the proceeding where use is made of such documents be in camera or otherwise subject to such procedures as the parties and the Court may agree to preserve the confidentiality of the information contained therein.

11.    Entering into, agreeing to and/or producing or receiving Confidential or Confidential – Outside Counsels' Eyes Only Information, or otherwise complying with the terms of this Protective Order shall not:

9

(a)    Operate as an admission by any party that any Discovery Material designated as Confidential or Confidential – Outside Counsels' Eyes Only contains or reflects trade secrets or any other type of confidential or proprietary information entitled to protection under applicable law;

(b)    Prejudice in any way the rights of any party to object to the production of documents it considers not subject to discovery, or operate as an admission by any party that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any party to be Confidential or Confidential – Outside Counsels' Eyes Only" Information;

(c)    Prejudice in any way the rights of any party to object to the authenticity or admissibility into evidence of any document, testimony or the evidence subject to this Protective Order;

(d)    Prejudice in any way the rights of any party to seek a determination by the Court whether any Discovery Material or Confidential or Confidential – Outside Counsels' Eyes Only Information should be subject to the terms of this Protective Order;

(e)    Prejudice in any way the rights of any party to petition the Court for a further protective order relating to any purportedly Confidential or Confidential – Outside Counsels' Eyes Only Information;

(f)    Prejudice in any way the rights of any party to petition the Court for permission to disclose or use particular Confidential or Confidential – Outside Counsels' Eyes Only Information more broadly than would otherwise be permitted by the terms of this Protective Order; or

(g)    Prevent any Producing Party from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular Discovery Material designated as Confidential or Confidential – Outside Counsels' Eyes Only Information by that party.

12.    The signing of this Protective Order or failure of a party, at the time it receives Discovery Materials designated as Confidential or Confidential – Outside Counsels' Eyes Only Information, to challenge or object to the Confidential or Confidential – Outside Counsels' Eyes Only designations shall not be deemed a waiver of its right to challenge or object to such designations at any later time. Any party may at any time challenge the designation of any Discovery Materials as Confidential or Confidential – Outside Counsels' Eyes Only and may request permission to use or disclose information with Confidential or Confidential – Outside Counsels' Eyes Only designations other than as permitted, pursuant to this paragraph by serving (by facsimile transmission) a written request upon counsel for the Producing Party at least ten (10) business days before the date of the proposed disclosure and by providing telephonic notice of such request on the same date the facsimile is transmitted. Such request shall specifically identify the Confidential or Confidential – Outside Counsels' Eyes Only Information, including production numbers, sought to be disclosed and the name, title and function of the person to whom disclosure is desired to be made. The Producing Party shall thereafter respond to the request in writing within ten (10) business days after receipt of same. Absent good cause shown, a failure to respond within such time shall constitute consent to the request. If, where consent has been withheld, the parties are subsequently unable to agree on the terms and conditions of disclosure, the matter may be submitted to the Court for resolution by the party seeking disclosure. Disclosure shall be postponed until a ruling has been obtained from the Court.

13.    Notwithstanding any default provisions of this Protective Order providing for confidential treatment, in the event of disagreement, the party asserting confidentiality shall have the burden of proving that the information at issue is entitled to the protection of this Protective Order.

14.    All provisions of this Protective Order restricting the use of information obtained during discovery shall continue to be binding on the parties and all persons who have received

11

information under this Protective Order, after the conclusion of this action, including all appeals, until further Order of the Court, unless the parties agree otherwise in writing.

15.    Any and all originals and copies of Discovery Materials designated Confidential or "Confidential – Outside Counsels' Eyes Only," shall, at the request of the Producing Party, be returned to that party within sixty (60) days after a final judgment herein, the mandate has issued in the case of an appeal, or settlement of this Action, or, at the option of the Producing Party, destroyed in that time frame, and any analyses, memoranda, or notes which were internally generated by the Receiving Party based upon such inadvertently-produced information shall be promptly destroyed by the Receiving Party, except that outside counsel for each party may maintain in its files one copy of each pleading filed with the Court, each deposition transcript together with the exhibits marked at the deposition, and documents constituting work product which were internally generated based upon or which include Confidential or Confidential – Outside Counsels' Eyes Only Information. In the event that outside counsel maintains such documents, it shall not disclose material containing any type of Confidential or Confidential – Outside Counsels' Eyes Only Information to another person absent subpoena or court order. Upon receipt of any subpoena for such information, the party receiving the subpoena shall immediately notify outside counsel for the Producing Party of the subpoena so that the latter may protect its interests. In the event that documents are returned to or destroyed at the request of the Producing Party, the other party or its outside counsel shall certify in writing that all such documents have been returned or destroyed, as the case may be.

16.    The inadvertent production in discovery of any Confidential or Confidential – Outside Counsels' Eyes Only information, without such designation at the time of the production, shall not be deemed a waiver in whole or in part of the Producing Party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating to the same or related subject matter, provided the Producing Party promptly upon discovery of the inadvertent disclosure notifies the Receiving Party in writing that the information

12

is Confidential or Confidential – Outside Counsels' Eyes Only. Such notification shall constitute a designation of the information as Confidential or Confidential – Outside Counsels' Eyes Only, and therefore subject it to the provisions of this Order. Disclosure of inadvertently disclosed Confidential or Confidential – Outside Counsels' Eyes Only information prior to receipt of such notice shall not be deemed a violation of this Order. However, those persons to whom disclosure was made are to be advised that the information is Confidential or Confidential – Outside Counsels' Eyes Only and must be treated in accordance with this Order and wherever possible any document embodying such Confidential or Confidential – Outside Counsels' Eyes Only information shall be marked "Confidential" or "Confidential – Outside Counsels' Eyes Only."

17. The inadvertent production in discovery of any privileged or otherwise protected or exempted information, shall not be deemed a waiver or impairment of any claim of privilege or protection, including but not limited to the attorney-client privilege and the protection afforded to work-product materials or the subject matter thereof, provided that the Producing Party shall immediately notify the Receiving Party in writing when inadvertent production is discovered. Upon receiving written notice from the Producing Party that privileged information or work-product material has been inadvertently produced, all such information, and all copies thereof, shall immediately be returned by the Receiving Party to the Producing Party and the Receiving Party and its counsel shall not use such information for any purpose absent agreement by the Producing Party or an order from the Court determining its disposition. If the parties disagree about the disposition of such material after conferring in good faith, then either side may move the Court for a resolution of the dispute. Any analyses, memoranda or notes which were internally generated by the Receiving Party based upon such inadvertently-produced information shall immediately be gathered by counsel for the Receiving Party and not used for any purpose absent agreement by the Producing Party or an order from the Court determining its disposition.

18. If Confidential or Confidential -- Outside Counsels' Eyes Only Information is the subject of a confidentiality obligation by the Producing Party to a non-party, the Producing Party

13

shall identify the information with sufficient particularity so as to enable the Receiving Party to understand the general subject of such information. If the non-party refuses a request from the Producing Party to consent to production of the information, the Receiving Party may request an Order from the Court with regard to the terms on which the information may be made available to the Receiving Party.

19.    Any violation of the terms of this Protective Order shall be punishable by such relief as deemed appropriate by the Court.

20.    Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

21.    Non- parties who produce information in this Action may avail themselves of the provisions of this Protective Order and Discovery Material produced by non-parties shall be treated by the parties in conformance with this Protective Order. If any Confidential or Confidential – Outside Counsels' Eyes Only Information is produced by a non-party to this Action, such non-party shall be considered a Producing Party within the meaning of that term as it is used in the context of this Order, and the parties to this Order shall be treated as Receiving Parties. Nothing in this paragraph shall permit a party to designate as Confidential or Confidential – Outside Counsels' Eyes Only any information produced by a non-party that such non-party did not itself designate as Confidential or Confidential – Outside Counsels' Eyes Only.

22.    This Order is without prejudice to the right of any party to seek relief from the Court upon good cause shown, from any of the restrictions provided above or to impose additional restrictions on the disclosure of any information or material produced.

23.    The Court retains jurisdiction subsequent to settlement or entry of judgment to enforce the terms of this Protective Order.

AGREED, EXCEPT REGARDING PARAGRAPH 4(c):

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP    POTTER ANDERSON & CORROON LLP


/s/ Karen E. Keller                                        /s/ Richard L. Horwitz
John W. Shaw (ID #3362)                          Richard L Horwitz (#2246)
Karen E. Keller (ID #4489)                        Kenneth L. Dorsney (#3726)
The Brandywine Building                           Hercules Plaza, 6th Floor
1000 West St.                                              1313 N. Market Street
Wilmington, Delaware 19801                     P.O. Box 951
(302) 571-6672                                          Wilmington, DE 19899
                                                                 (302) 984-6000

*Attorneys for Plaintiffs*
*Infineum International Ltd. and*               *Attorney for Defendant*
*Infineum USA L.P.*                                  *Afton Chemical Corp.*


OF COUNSEL:                                         OF COUNSEL:

Richard L. DeLucia                                   Ford F. Farabow, Jr.
Elizabeth A. Gardner                                Ronald A. Bleeker
KENYON & KENYON LLP                         Mark J. Feldstein
One Broadway                                           FINNEGAN, HENDERSON,
New York, New York 10004-1050             FARABOW, GARRET & DUNNER LLP
(212) 425-7200                                        901 New York Avenue, N.W.
                                                                 Washington, DC 200001-4413
                                                                 (202) 408-4000

                                                                 Kenneth M. Frankel
                                                                 FINNEGAN, HENDERSON,FARABOW,
                                                                 GARRET & DUNNER LLP
                                                                 Two Freedom Square
                                                                 11955 Freedom Drive
                                                                 Suite 800
                                                                 Reston, VA 20190-5675
                                                                 (571) 203-2700


Dated:  June 1, 2006
734683 / 29965


SO ORDERED this _____ day of _____, 2006.


                                   _____
                                   UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INFINEUM INTERNATIONAL LTD. and )
INFINEUM USA L.P., )
                         )
         Plaintiffs, )
                         )
           v. )   C. A. No. 05-884 (JJF)
                         )
AFTON CHEMICAL CORP., )
                         )
         Defendant. )

         I hereby certify (i) my understanding that Discovery Material and/or Confidential and/or

Confidential – Outside Counsels' Eyes Only Information are being provided to me pursuant to the

terms and restrictions of the Protective Order (the "Order") entered by the United States District

Court for the District of Delaware (the "District Court") in this Action, and (ii) that I have read

the Order. I understand the terms of the Order, I agree to be fully bound by the Order, and I

hereby submit to the jurisdiction of the District Court for purposes of enforcement of the Order. I

understand that violation of the Order may be punishable by contempt of Court.

Dated: _____     Signature: _____

                                         Name:      _____

                                         Address:  _____

                                                           _____

                                                           _____

# EXHIBIT 2

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J A. POPPER
TERESA A. CHEEK

NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL

LISA A. ARMSTRONG
GREGORY J. BABCOCK
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

KAREN E. LANTZ
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
KRISTEN R. SALVATORE (PA ONLY)
MICHELE SHERRETTA
MONTE T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER (SC ONLY)
JOHN E. TRACEY
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6554
DIRECT FAX: (302) 576-3467
kkeller@ycst.com

June 1, 2006

**BY CM/ECF**

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 N. King Street
Wilmington, Delaware 19801

    Re:   *Infineum International Ltd. and Infineum USA L.P. v. Afton Chemical Corp.,*
          *Civ. Act. No. 05-884*

Dear Judge Farnan,

       After extensive discussion, Plaintiffs Infineum International Ltd. ("Infineum International") and Infineum USA L.P ("Infineum USA" and collectively with Infineum International, "Infineum") and Defendant Afton Chemical Corp. ("Afton") have been unable to produce a mutually agreed-to stipulated protective order for the Court's review.

       Infineum and Afton have largely reached agreement regarding the need for and terms of a proposed stipulated protective order. The parties agree that this protective order should have two tiers—materials may be designated as "Confidential" or "Confidential – Outside Counsels' Eyes Only." The parties have also reached agreement regarding the scope of discovery information that falls within each tier. More specifically, both Afton and Infineum agree that the "Confidential" designation may be applied to information that is "non-public, confidential or proprietary." (*See* Exhibit 1, Paragraph 1.) A high level of protection is afforded by a "Confidential – Outside Counsels' Eyes Only" designation that may be applied to documents and other discovery responses that contain "trade secrets, know how, or proprietary technical data, or business, financial or commercial information, the disclosure of which would be likely to cause harm to the business or competitive position of the party making the ... designations." (*See id.*) Finally, the parties agree that both Infineum and Afton may designate a limited number of in-house counsel who will have access to the opposing party's "Confidential"

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
June 1, 2006
Page 2

information and that those designated in-house counsel would not be able to view information designated as "Confidential – Outside Counsels' Eyes Only."

Notwithstanding the vast leeway for protection of confidential information afforded by this agreed to two-tier framework, Afton nevertheless objects to Infineum's designation of its in-house counsel, the individuals presently supervising this litigation, under the protective order. Kenyon & Kenyon's day-to-day in-house litigation contact at Infineum USA L.P., Mr. Jacob Levine, one of the individuals Afton objects to including under the protective order, has patent prosecution responsibilities in addition to his litigation responsibilities. Afton additionally objects to inclusion of Kenyon & Kenyon's primary contact at Infineum International Ltd., Ms. Susan Fletcher Watts. Though she has no actual patent prosecution responsibilities, Ms. Watts is the IP department manager. And, although Afton has the ability to designate its proprietary, trade secret, and/or competitively sensitive information as "Confidential – Outside Counsels' Eyes Only" thereby precluding Mr. Levine's and Ms. Watt's access to such information, Afton seeks to preclude Mr. Levine and Ms. Watts from access to *all* information designated under the protective order. Afton's objection, if sustained, would interfere with Kenyon & Kenyon's discussion of this case and strategy with its clients, the two Infineum entities. Moreover, such an objection to the designation of Mr. Levine and Ms. Watts is completely unreasonable given the extensive protection afforded by the availability of the "Confidential – Outside Counsels' Eyes Only" designation.

Initially, Afton did not consent to the designation of technical information as "Confidential – Outside Counsels' Eyes Only." Infineum proposed this as a means to address Afton's concerns regarding the designation of in-house patent counsel under the protective order. Although Afton ultimately accepted Infineum's proposal that competitively sensitive technical information be designation as "Confidential – Outside Counsels' Eyes Only," it continued to maintain its objection to Infineum's in-house counsel designations.

Afton provided two proposals to resolve the issue. First, Afton requested that the Infineum in-house attorneys be prevented from prosecuting patents for two years. With a company such as Infineum, for which patent litigation is rare, this proposal is unworkable. Mr. Levine's responsibilities include patent prosecution when not supervising litigation. He would end up unemployed under such a provision. Second, Afton suggested that Kenyon and Kenyon identify to Afton the particular "Confidential" documents it wishes to disclose to Infineum in-house patent counsel. Afton would then consider these documents on a case-by-case basis. Such a proposal is burdensome and additionally invades the protections provided by the attorney work product doctrine and the attorney client privilege.

A.    **It is Unnecessary to Prohibit In-House Counsel Who Engage in Prosecution from Accessing "Confidential" Discovery Materials.**

While Infineum recognizes Afton's concern about the protection of its proprietary technical information, the two-tiered protective order framework agreed to by both parties eliminates the risk that Mr. Levine or Ms. Watts will inappropriately or inadvertently use Afton's proprietary technical or business information in their patent prosecution work.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
June 1, 2006
Page 3

        The parties have already agreed that in-house counsel may not access "trade secrets, know how, or proprietary technical data, or business, financial or commercial information, the disclosure of which would be likely to cause harm to the business or competitive position of the party making the … designations." Thus, the very information that Afton seeks to protect from disclosure to Mr. Levine and Ms. Watts can be protected by Afton designating such information as "Confidential – Outside Counsels' Eyes Only." Information designated as "Confidential," however, while non-public, is not the type of information which can cause harm to a business or competitive position if disclosed to in-house counsel. Thus, there is no reason to deny prosecuting in-house counsel access to merely "Confidential" information.

        Given the existence and scope of the "Confidential – Outside Counsels' Eyes Only" designation category, it is no longer necessary to preclude Mr. Levine or Ms. Watts specifically, or in-house counsel who engage in patent prosecution generally, from viewing "Confidential" information. Both Infineum's and Afton's business and technical interests are sufficiently protected by the two-tiered protective order framework agreed to by the parties. This court has noted that "sufficient safeguards can be implemented under Federal Rule of Civil Procedure 26(c) to protect against the abuse of confidential information." *See Avery Dennison Corp. v. Minnesota Mining & Mfg. Co.*, Civ. Act. No. 02-125, 2001 U.S. Dist LEXIS 22315, at *6 (D. Del. Oct. 26, 2001). Infineum proffers that the framework agreed to by the parties provides such protection and that further limitation of disclosures to patent prosecuting in-house counsel is unnecessary.

        Moreover, because in-house counsel are already prohibited from viewing "Confidential – Outside Counsels' Eyes Only" information under the agreed to two-tier framework, the present dispute is distinguishable from a number of Delaware cases which have prohibited counsel who engage in prosecution from accessing an opponent's documents and other discovery responses. For example, while the court in *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, Civ. Act. No. 03-484, 2004 WL 1196965 (D. Del. May 25, 2004) noted that access to sensitive information by in-house patent counsel creates a "high risk of inadvertent disclosure" or misuse, the plaintiffs in that case sought to disclose "all discovery" produced by the defendant, including its "highly confidential" information, to its patent prosecuting in-house counsel. *See id.* at *1-2. In this case, Infineum seeks to disclose only Afton's "Confidential" information, and not its "trade secrets, know how, or proprietary technical data, or business, financial or commercial information," to Mr. Levine and Ms. Watts. Similarly, while the court in *Motorola, Inc. v. Interdigital Tech. Corp.*, Civ. Act. No. 93-488, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994) prohibited counsel accessing confidential materials from prosecuting related patents for a period of time after the termination of the dispute, it is also distinguishable from the present case. *See id.* at *1-2. In that case, defendant's outside counsel, who also engaged in patent prosecution for the defendant, sought access to *all* of plaintiffs confidential materials. Such a prosecution prohibition is unnecessary in this case as the "Confidential – Outside Counsels' Eyes Only" designation ensures that Mr. Levine and Ms. Watts will not have access to any documents or other discovery materials which could conceivably influence future prosecution work.

# Young Conaway Stargatt & Taylor, LLP

The Honorable Joseph J. Farnan, Jr.
June 1, 2006
Page 4

The agreed to stipulated protective order scheme, with two tiers of confidentiality, not only sufficiently protects Afton's interests, but it is also consistent with other orders approved by the Delaware courts. *See generally Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D. Del. 1988) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."); *see also Philips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 46 (D. Del. 1994) ("[T]his Court recognizes the need to afford fuller protection to technological information than what is extended to ordinary business information.").

**B.    A Protective Order Which Limits Access to Confidential Information by Prosecuting In-House Counsel is Unworkable**

Not only is it unnecessary to preclude Mr. Levine and/or Ms. Watts from accessing Afton's "Confidential" information given the existence of the agreed-to "Confidential – Outside Counsels' Eyes Only" category, but, as Infineum has repeatedly emphasized to Afton, any proposed protective order that includes such a preclusion is simply unworkable and would substantially prejudice Infineum's ability to manage the present litigation.

Mr. Levine is the only U.S. patent counsel employed by either Infineum USA or Infineum International. Further, Mr. Levine is the only attorney with any patent related experience working for either Infineum entity in the United States. Mr. Levine has also been in communication with Infineum's outside counsel, Kenyon & Kenyon LLP, since the present dispute's inception. In other words, neither Infineum USA nor Infineum International employ another attorney with the experience necessary to effectively and meaningfully track a patent litigation. Infineum simply cannot substitute another in-house counsel for Mr. Levine as no appropriate substitute exists. *See generally Motorola*, 1994 U.S. Dist. LEXIS 20714, at *6 (noting that "[c]ourts have also considered the hardship to the client if counsel is disqualified or restricted in some manner").

Prohibiting in-house counsel from reviewing material designated as "Confidential" will also disparately impact the two parties. If Mr. Levine and/or Ms. Watts are prohibited from accessing both "Confidential" and "Confidential – Outside Counsels' Eyes Only" information, Infineum will presumably be denied access to the majority of Afton's discovery responses, will be unable to review expert reports, draft briefs and other pleadings, and will not have access to deposition transcripts. Afton, who unlike Infineum apparently employs non-prosecuting attorneys who are qualified to monitor the present litigation, would not be subject to such draconian review restrictions. This disparate impact alone mitigates against unnecessary "Confidential" information disclosure restrictions.

For the foregoing reasons, Infineum requests that its proposed protective order provisions be adopted allowing both parties' in-house contacts to have access to "Confidential"

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
June 1, 2006
Page 5

information, irregardless of whether they are involved in patent prosecution, and being restricted from viewing "Confidential – Outside Counsel' Eyes Only" information.

Respectfully submitted,

Karen E. Keller (No. 4489)

KEK/prt

cc:   Clerk of the Court
      Richard L. Horwitz, Esquire
      Kenneth L. Dorsney, Esquire
      Ford F. Farabow, Jr., Esquire
      Kenneth M. Frankel, Esquire
      Ronald A. Bleeker, Esquire
      Mark J. Feldstein, Esquire

# EXHIBIT 3

> Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INFINEUM INTERNATIONAL LTD. and ) 
INFINEUM USA L.P., )
            )
        Plaintiffs, )
            )   C. A. No. 05-884 (JJF)
        v. )
            )
AFTON CHEMICAL CORP., )
            )
        Defendant. )

## DEFENDANT AFTON'S POSITION ON DISPUTED
## SECTION OF PROTECTIVE ORDER

Defendant Afton Chemical Corporation ("Afton") submits its position on the disputed section of the proposed protective order. Afton opposes Plaintiff Infineum's version of paragraph 4(c) to the extent that it would permit access to Afton's proprietary information by Infineum's in-house patent attorneys who are involved in prosecuting patents in a field in which Afton and Infineum compete.[1]

<u>Background</u>

Infineum insists on such access by two of its in-house patent attorneys, Mr. Levine and Ms. Fletcher Watts. (Ex. 1.) Mr. Levine, located in the United States, prosecutes patents for engine oil lubricants and lubricant additives, which is the focus of this litigation and in which Afton and Infineum compete. (Ex. 9 at 1; Ex. 10 at 1.) Indeed, Mr. Levine prepared, filed, and prosecuted Infineum's patent-in-suit. (Ex. 2 at 20.) Ms. Fletcher Watts, Infineum's Chief Intellectual Property Attorney and a registered European Patent Attorney located in England (Ex. 3), is Mr. Levine's direct supervisor, is involved in formulating Infineum's intellectual property strategy, is aware of pending patent applications filed by Infineum, and is in a position to have

---

[1]     Copies of the parties' correspondence on this issue are attached as Exhibits 4-11.

input into those patent applications.[2]   Both Mr. Levine and Ms. Fletcher Watts participated in pre-suit negotiations between the parties.

Mr. Levine, Ms. Fletcher Watts, and any other Infineum patent attorneys who are involved in prosecuting patents in this field, should not see Afton's proprietary and competitively valuable research and development work, which Infineum has sought in discovery. An Infineum patent attorney with access to that information would be in a position to write patent claims or have patent claims written that cover Afton's current products and those under development, irreparably harming Afton. It is for that precise danger, among others, that Afton's proposed "prosecution bar" language is very common in patent litigation protective orders in this and other courts.

In an effort to avoid that problem, Afton has offered to limit the disclosure of its proprietary information to Infineum's in-house counsel who are not involved in prosecuting patents in this field, and who agree not to do so during this litigation and for two years thereafter, which is very standard language in protective orders in this District:

> 4(c). For each side, a total of two in-house counsel . . . who (i) have responsibility for maintaining, defending or evaluating this litigation; (ii) are not, directly or indirectly, involved in the prosecution of any patent applications relating to engine oil lubricants or additive packages for such lubricants; and (iii) agree in writing not to engage in the preparation or prosecution of patent applications relating to engine oil lubricants or additive packages for such lubricants for a period ending two (2) years from the date of termination of this Action . . . .

(Ex. 4 at 4, ¶ 4(c).) Infineum rejected limitations (ii) and (iii), insisting on giving its patent attorneys access to Afton's confidential information. (Ex. 5 at 4, ¶ 4(c).)

> The Court Should Bar Access to Afton's Proprietary Information by Attorneys
> <u>Involved in Prosecuting Patents in the Technical Field in which the Parties Compete</u>

Afton's proposed protective order paragraph 4(c) would ensure that sensitive, proprietary information is not shared with an opposing party's in-house counsel who is concurrently involved in patent prosecution in the specific field that is the subject of this litigation and in which the

---

[2]     Telephone conversation between Afton's counsel Kenneth M. Frankel and Infineum's counsel Elizabeth A. Gardner and K. Patrick Herman (May 31, 2006).

parties compete, but would permit access by other in-house counsel. Because technology drives competition in this industry, disclosure of Afton's proprietary R&D information to Mr. Levine, Ms. Fletcher Watts, or other patent attorneys involved in prosecuting patents in this field would irreparably harm Afton.        Because the proposed order contemplates a two-level confidentiality structure, Infineum argues that Afton could simply designate information that it does not want Infineum's in-house patent counsel to see at the more restrictive level, i.e., "Outside Counsels' Eyes Only." (Ex. 7 at 1; Ex. 10 at 2.) Infineum's approach, however, would result in a much larger volume of information, predominantly R&D, being put into this more restrictive level. The net effect would thus be to deprive *both parties'* in-house counsel who are not involved in patent prosecution from being able to monitor and evaluate potentially important information, which is the primary reason for having that access. (Ex. 7 at 1.) Moreover, this approach would not adequately protect Afton's proprietary information, because the inevitable future disputes about whether particular Afton information has been properly placed in the more restrictive level could result in that information being moved to the less restrictive level, in which case it would automatically become available to both Mr. Levine and Ms. Fletcher Watts.

Infineum's additional arguments for including Mr. Levine are equally unfounded. Infineum has contended that Mr. Levine is the "only Infineum counsel who can track the present litigation and communicate with outside counsel in an informed and effective manner." (Ex. 10 at 2.) Infineum, however, does not dispute that the two Infineum plaintiffs employ other in-house counsel, has expressly insisted on providing access for up to *three* in-house Infineum counsel, and has designated a non-patent lawyer, Mr. McCallum. (Ex. 8 at 1; Ex. 9 at 1; Ex. 10 at 2; Ex. 1.) Infineum also has taken no position on why Ms. Fletcher Watts needs to be included. In contrast, Afton intends to exclude its own in-house patent counsel from access to Infineum's proprietary information, and to include under the protective order only Afton's in-house counsel who are not involved in patent prosecution. (Ex. 8 at 1.)

The key issue is the risk of "inadvertent or accidental disclosure" of a competitor's confidential information and whether the particular counsel who seeks access to that information is "involved in competitive decisionmaking" and thus able to use the information competitively against the disclosing party. *U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *see Affymetrix, Inc. v. Illumina, Inc.*, Civ. A. 04-901-JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005) (citing *U.S. Steel;* barring access by counsel involved in competitive decision making in "settling patent litigation and licensing"). "Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] project[s] sales to be most critical.'" *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, Civ. A. No. 03-484-KAJ, 2004 WL 1196965, at *2 (D. Del. May 25, 2004) (quoting *Motorola, Inc. v. Interdigital Tech. Corp.*, Civ. A. No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at *11 (D. Del. Dec. 19, 1994)). Not only does Mr. Levine prosecute patents in the same field, but Ms. Fletcher Watts supervises him, has the opportunity for input into patent applications, and is involved in formulating Infineum's intellectual property strategy.

As with the patent attorneys in *Commissariat* and *Motorola*, "[t]here can be no question" that if Mr. Levine or Ms. Fletcher Watts learns Afton's proprietary information and then prosecutes patents or provides input into patent applications in the field of engine oil lubricants and additives, they "'will have to distill and compartmentalize the confidential knowledge they have gained.' This creates a high risk of inadvertent disclosure of the [opposing side's] highly confidential information." *Commissariat,* 2004 WL 1196965 at *2 (quoting *Motorola,* 1994 U.S. Dist. LEXIS 20714, at *13). As the court in *Motorola* recognized, if a patent attorney were to see a competitor's

> voluminous confidential information and then later prosecute the patents [the attorney] would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the . . . attorney[] may be.

*Id.*, at \*14-\*15. Accordingly, courts have frequently precluded attorneys involved in prosecution of patents in the technical field of the patent-in-suit from access to the opposing-party competitor's confidential information.[3]

The substantial risk of irreparable competitive harm to Afton far outweighs the alleged harm to Infineum by excluding Mr. Levine and Ms. Fletcher Watts under the proposed order. Moreover, their exclusion does not prejudice Infineum's ability to litigate this case. *See Intel Corp. v. Via Tech., Inc.*, 198 F.R.D. 525, 529 (N.D. Ca. 2000) ("The party seeking access must demonstrate that its *ability to litigate* will be prejudiced [by its failure to access confidential information], not merely its ability to manage outside litigation counsel." (emphasis added)).

The language of Afton's proposed paragraphs 4(c)(ii) and (iii), which Infineum omits, provides an appropriate balance between protecting the proprietary information of Afton and giving access to Infineum's in-house counsel who are not concurrently involved in patent prosecution in the same field. Accordingly, Afton requests that the Court enter the proposed protective order attached as Attachment A.

Respectfully submitted,

OF COUNSEL:

Ford F. Farabow, Jr.
Ronald A. Bleeker
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
Tel.: (202) 408-4000

POTTER ANDERSON & CORROON LLP

By:   /s/ *Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    kdorsney@potteranderson.com

*Attorneys for Defendant*
*Afton Chemical Corp.*

---

[3]    *See, e.g., Commissariat*, 2004 WL 1196965, at \*3 (barring access to confidential information by in-house patent attorneys who prosecute patents in the field, and barring prosecution in the field by attorneys with such access, during the pendency of the litigation and for one year after); *Motorola,* 1994 U.S. Dist. LEXIS, at \*17-\*18 (barring counsel who already received confidential information from prosecuting patents in the field during the pendency of the litigation and one year after).

Kenneth M. Frankel
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Suite 800
Reston, VA 20190-5675
Tel.: (571) 203-2700

Dated: June 1, 2006
734671/29965